IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Employers Mutual Casualty Company, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No.: **4:12-cv-00399-RAS** |
| | § | |
| Discover Property & Casualty Insurance | § | |
| Company, | § | |
| Defendant. | § | |

---

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Employers Mutual ("**EMC**") moves for partial summary judgment that:

[1]  Defendant Discover Property & Casualty ("**Discover**") has breached its duty to defend its additional insured Parkway Builders, LLC ("**Parkway**") against the claims of James and Janice Ingram and the Shops at Prestonwood Homeowners Association in these "**underlying lawsuits**":[1]/

> *Universal Forest Products Western Division, Inv. v. Holigan Investment Group, Ltd.,* No. 2009-60065-393 in the 393rd District Court, Denton County, Texas; and
>
> *Shops at Prestonwood Homeowners' Assn. v. Parkway Builders, LLC,* No. 2011-60163-393 in the 393rd District Court, Denton County, Texas; and

[2] EMC's coverage for Parkway is excess to that provided by Discover, with the result that only Discover has a duty to defend Parkway.[2]/

---

[1]     The second-listed *HOA* suit has now been consolidated into the first-listed *UFP* suit.  The *UFP* suit included claims by twelve homeowners besides the Ingrams, but those other claims tentatively have been settled, with EMC agreeing to then dismiss its claims versus Discover pertaining to those twelve claimants.

[2]     EMC seeks only a "partial" summary judgment, since Parkway's defense costs continue to grow and it appears impractical to move at this time for a precise damage award for those costs or penalty interest thereon.

# I.
## SUMMARY OF MOTION

This motion presents three overarching issues:

1.      Is Parkway Builders, LLC ("**Parkway**") an additional insured under the policies Discover issued to several affiliated named insureds, including Universal Forest Products Western Division, Inc. ("**UFP**")?

2.      If the answer is "yes", then does Discover have a duty to defend Parkway in the underlying lawsuits?

3.      Again, if the answer is "yes," then is EMC's coverage excess to that provided by Discover so that all of Parkway's defense costs should be borne by Discover, or are the two carriers instead "co-primaries" so that those costs should be split equally?

Both the Parkway-UFP contract and the underlying pleadings show Parkway Builders, LLC was the entity intended to be additionally insured by Discover.

Discover has a duty to defend Parkway under Texas' eight-corners rule because the allegations against Parkway are potentially covered by Discover's policies.  The only complication to an otherwise routine eight-corners analysis results from the inclusion in both Discover policies of a self-funded retention ("**SFR**") endorsement.  EMC will show the SFR endorsements do not apply to additional insureds like Parkway.

Lastly, the priorities-of-coverage question involves a straightforward application of the insurers' "other insurance" provisions – Discover's policies say they are primary, and EMC's says it is excess under the circumstances presented.

# II.
## SUMMARY JUDGMENT EVIDENCE

This motion is based on the following attached summary judgment evidence:

Exhibit A:    "**Affidavit of Al Roberts**", whereby he authenticates EMC's policy as Exhibit B:

Exhibit B:    EMC policy no. 2D8-33-77---09;

Exhibit C:    "**Affidavit of Jack Conner**", one of Parkway's attorneys in the underlying lawsuits, whereby he authenticates certain pleadings asserting claims against Parkway in the underlying lawsuits as Exhibits D1, D2, D3 and E, as well as Exhibits F and F1 – deposition testimony proving up Parkway's turn-key framing services contract with one of Discover's named insureds and the Plaintiff in one of the underlying lawsuits, Universal Forest Products Western Division, Inc. ("**UFP**"):

Exhibit D:    Pleadings asserting claims against Parkway in *Universal Forest Products Western Division, Inc. v. Holigan Investment Group, Ltd.,* No. 2009-60065-393 in the 393rd District Court, Denton County, Texas:

Exhibit D1:    Plaintiff Universal Forest Products Western Division, Inc.'s Third Amended Petition;[3]/

Exhibit D2:    James R. Ingram And Janice A. Ingram's Third Amended Counterclaim, Third Amended Cross-Action And Third Amended Third-Party Petition; and

Exhibit D3:    The Shops At Prestonwood Homeowners' Associations' First Amended Cross-Claim Against Parkway Builders, LLC;

Exhibit E:    Plaintiff's Original Petition in *Shops at Prestonwood Homeowners' Assn. v. Parkway Builders, LLC,* No. 2011-60163-393 in the 393rd District Court, Denton County, Texas; and

Exhibit F:    Excerpts of deposition testimony in the underlying lawsuits from UFP's Jeff Crisp, authenticating Exhibit No. 2 to his deposition as the Parkway-UFP contract; and

Exhibit F1:    Exhibit No. 2 to Mr. Crisp's deposition – the Parkway-UFP contract;[4]/ and

Exhibit G:    "**Affidavit of Thomas Caudle**", whereby he authenticates Exhibit H – EMC's tender of the underlying lawsuits to Discover, Exhibits I and J – copies of Discover's insurance policies produced in discovery in this matter, Exhibit K –

---

[3]    Although offered as evidence, EMC does not seek damages from Discover for any defense for Parkway for UFP's pleaded claims; Parkway has never tendered those UFP claims to EMC for a defense.

[4]    *But see* footnote 5, *infra*, discussing why one page of Exhibit F1 may or may not actually be part of the contract.

Discover's admissions that UFP is a named insured under its policies, and Exhibits L1 to L3 - "Parkway Builders" business entity filings obtained from the publically available online records of the Texas Secretary of State:

Exhibit H:      Letter tendering Parkway's defense to Discover;

Exhibit I:        Discover policy no. D002L00343 (effective 6/1/2008 to 6/1/2009);

Exhibit J:        Discover policy no. D002L00369 (effective 6/1/ 2009 to 6/1/2010);

Exhibit K:      Discover's responses to EMC's Second Requests For Admissions; and

Exhibit L:       Texas Secretary of State records for:

      Exhibit L1:    "Parkway Builders, Ltd.";

      Exhibit L2:    "Parkway Builders, LP"; and

      Exhibit L3:    "Parkway Builders, LLC" – the entity sued in the underlying lawsuits, including by UFP for Parkway's alleged failure to pay all amounts due under the turnkey framing contract.

### III.
### ISSUES TO BE DECIDED BY THE COURT

3.01    This motion potentially requires the Court's decision on the following issues:

a.   Did the contract between Parkway and Discover's named insured, UFP, require Discover to additionally insure "Parkway Builders LLC"?

b.   If the additionally insured entity was Parkway Builders LLC, then are the allegations against Parkway in the underlying pleadings potentially covered under the Discover policies so as to trigger a duty to defend?

c.   Does the "General Liability Self-Funded Retention" endorsement contained in both Discover policies apply to additional insureds like Parkway?

d.   Do the carriers' "other insurance" clauses apply as written so that

Discover's coverage for Parkway is "primary" and EMC's is "excess",
with the result that only Discover has a duty to defend EMC?

## IV.
### UNDISPUTED MATERIAL FACTS

4.01   On July 1, 2008 a "Parkway Builders" entity contracted with UFP for
"turnkey" framing – *i.e.*, UFP would provide materials (floor and roof trusses and other
lumber products) and labor required for the framing.  (Ex. F1).

4.02   In the Parkway-UFP contract, the Parkway entity was both imprecisely
indentified as just "Parkway Builders", and misidentified as "Parkway Builders, LP" and at
the signature line as "Parkway Builders, LP, a limited liability company".  (Ex. F1 at
UFP0176).

4.03   A partnership with the name "Parkway Builders, LP" had been formed on
1/28/2008, but on 3/3/2008 – before Parkway contracted with UFP – its name was changed to
Parkway Builders I, LP.  (Ex. G at ¶9.b; Ex. L2).

4.04   Although obviously there was no limited liability company with the name of
"Parkway Builders, LP" in existence when Parkway contracted with UFP, "Parkway Builders,
LLC" - a limited liability company - had been formed on 3/3/2008.  (Ex. G at ¶9.c; Ex. L3).

4.05   In the underlying lawsuit filed by UFP, UFP has sued that limited liability
company, Parkway Builders, LLC, and not any other "Parkway Builders" entity.  (Ex. D1).

4.06   The Ingrams and the HOA have also sued "Parkway Builders, LLC" for
alleged defective construction of the Ingrams' townhome and an amenity center in a Denton
County subdivision known as The Shops At Prestonwood.  (Exs. D2-D3 and Ex. E).

4.07   The Parkway-UFP contract required UFP to have Parkway be additionally

insured under UFP's commercial general liability policy.  (Ex. F1 at UFP0173, ¶8(B)).

4.08    The contract mandated that the UFP-provided insurance afforded Parkway be "primary" insurance.  (Ex. F1 at UFP0173, ¶8(B) and at UFP0182, ¶6 (clause in main body of contract requiring that coverage provided by UFP's insurer be "primary and any insurance provided by [Parkway] is excess and non contributory", and in "Agreement Addendum" – to the extent that Addendum is part of the contract[5]/ – reiterating that UFP's general liability coverage would contain "primary wording")).

4.09    UFP's pleading against Parkway Builders, LLC specifies its materials were provided for the The Shops At Prestonwood development during the July 2008 to October 2008 time period.  (Ex. D1 at 4, ¶26).

4.10    UFP's general liability insurance in place when its work was performed at The Shops At Prestonwood development was with Discover – specifically, Discover's policy no. D002L00343, effective 6/1/2008 to 6/1/2009, with policy limits of $2 million per occurrence, and $4 million in the aggregate.  (Ex. I at 33; Ex. K, admission 1).

4.11    UFP's subsequent general liability policy was also with Discover – to wit, policy no. D002L00369, effective 6/1/2009 to 6/1/2010, with identical limits of insurance. (Ex. J at 21; Ex. K, admission 2).

4.12    The term "insured" in the Discover policies includes both its named insureds, like UFP, and "any person or organization qualifying as such" an insured under the policies' "Section II – Who Is An Insured."  (Ex. I at 34; Ex. J at 22).

---

[5]        According to the deposition testimony of UFP's Jeff Crisp, UFP attached the Addendum (Ex. F1 at UFP0182) to the contract when UFP signed and returned the contract to Parkway.  (Ex. F at depo. page 65, lines 10-11).  To EMC's knowledge, Parkway has never conceded that the Addendum is properly part of the contract. For purposes of this Motion, however, EMC will *assume* the UFP-friendly Addendum is part of the contract, with the understanding that assumption should in no way be considered as binding on Parkway.

4.13    In that regard, both Discover policies include a trio of potentially applicable additional insured endorsements, but one of the three – entitled "Additional Insured Endorsement" – purports to reduce the policy limits available to additional insureds.  (Ex. I at 29; Ex. J at 56).

4.14    The other two additional insured endorsements in both policies do not reduce the policy limits for additional insureds and work in tandem – one endorsement applicable while UFP's work was ongoing and requiring the damage to be caused at least in part by UFP or persons action on its behalf, and the other applicable after UFP's operations were completed and requiring the damage to be caused at least in part by "your work" (a defined term referring to UFP's work and materials it supplied, *see* Undisputed Fact No. 4.17, below). (Ex. I at 61, 65; Ex. J at 50, 55).

4.15    More specifically, the endorsement applicable <u>while UFP's work was ongoing</u> has a "Schedule" to identify Discover's additional insured(s) that is completed in open-ended fashion with "**Any person or organization where required by written contract**", and then includes the following requiring the injury or damage to at least in part be caused by the acts or omissions of UFP or of others acting on its behalf:

> A.  **Section II - WHO IS AN INSURED** is amended to include as an additional insured the … organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" [or] "property damage" … caused, in whole or in part, by:
> a.  Your [*i.e.*, UFP's] acts or omissions; or
> b.  The acts or omissions of those acting on your behalf
> in the performance of your ongoing operations for the additional insured(s) …

(Ex. I at 61; Ex. J at 50).

4.16    Similarly, Discover's additional insured endorsement applicable for damages occurring <u>after UFP's work was completed</u> has a "Schedule" to identify the additional

insured(s) that is again completed with "**Any person or organization where required by written contract**", and then includes the following, which again requires the injury or damage to at least in part be caused by UFP's work:

> **Section II - WHO IS AN INSURED** is amended to include as an additional insured the … organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" [or] "property damage" … caused, in whole or in part, by "your work" … performed for the additional insured …

(Ex. I at 65; Ex. J at 55).

4.17   "Your work" used in the latter "completed operations" additional insured endorsement is defined in both policies as follows:

> "Your work":
> **a.** Means:
>> **(1)** Work or operations performed by you [*i.e.*, UFP] or on your behalf; and
>> **(2)** Materials, parts or equipment furnished in connection with such work or operations.
> **b.** Includes
>> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
>> **(2)** The providing of or failure to provide warnings or instructions.

(Ex. I at 49; Ex. J at 37).

4.18   Both Discover policies include the following via insuring agreement:

> **COVERAGE A  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement.**
>> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages. …
>>> …
>> **b.** This insurance applies to "bodily injury" or "property damage" only if:
>>> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" …; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period [*i.e.*, 6/1/2008 to 6/1/2009 for the first policy, and 6/1/2009 to 6/1/2010 for the second].

(Ex. I at 34; Ex. J at 22).

4.19    The terms "bodily injury", "property damage" and "occurrence" from the quoted insuring agreement are defined in pertinent part in Discover's policies as follows:

"Bodily injury" means bodily injury, mental anguish, shock, mental injury, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

(Ex. I at 68; Ex. J at 58).

"Property damage" means:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Ex. I at 47-48; Ex. J at 35-36).

4.20    Endorsement #1 to both policies was a "General Liability Self-Funded Retention" endorsement (hereinafter the "**SFR endorsement**").  (Ex. I at 50-55; Ex. J at 39-44).

4.21    That SFR endorsement purports to impose a Self-Funded Retention of "$2,000,000 Per 'Incident'" or "occurrence" that "applies to all coverages under Commercial General Liability".  *Id.*

4.22    The SFR endorsement never states that it applies to additional insureds, like Parkway; as to Discover's named insureds, however, the endorsements appear to essentially make the policies fronted with the policy limits equal to UFP's self-insured retention, and

delegates back to such named insureds the responsibility of defending suits against themselves, including the responsibility of paying 100% of their defense costs.  *Id.*

4.23    James and Janice Ingram and the homeowners' association have filed pleadings against Parkway in the underlying lawsuits, alleging defects in the materials and services provided by Discover's named insured, UFP.  (Exs. D2-D3 and E).

4.24    In their pleading, James and Janice Ingram allege they purchased a townhome from Parkway (Ex. D2 at 4), and then allege:

> Further, Counter-Defendant UFP participated in the design and/or construction of the townhome made the basis of this suit.  Based on information and belief, Counter-Defendant UFP furnished the majority of the labor and/or materials that have been found to be defective in the Townhomes.  Specifically, UFP performed the framing and truss work, which has been found to be defective and the cause, in whole or in part, of water infiltration into the Townhomes.  …  UFP's negligence proximately caused the damages the INGRAMS seek in this matter.
>
> * * *
>
> Said Counter-Defendant UFP negligently undertook to engage in activities reserved for structural engineers, and in so doing, should have recognized that it was necessary for the protection of the INGRAMS to ensure the building was structurally sound, given their actions involving the design of structural members and loading.
>
> * * *
>
> [D]ue to UFP's failure to construct and/or install the framing system, roof trusses and/or floor trusses in accordance with the plans/specifications and/or pertinent industry standard, the INGRAMS suffered the property damage caused by leaks and water intrusion …

(Ex. D2 at 9, 30).

4.25    Besides seeking to recover for the alleged damages to their townhome, the Ingrams also alleged they "have suffered great physical and mental pain, suffering and anguish".  (Ex. D2 at 39).

4.26    In the *UFP* lawsuit, the Homeowners' Association alleges:

> 3.    The townhomes and the Amenity Center have numerous construction defects.  These defects include window and roof leaks; windows that are improperly installed and improperly blocked; windows that are not properly

> flashed, caulked and taped correctly with appropriate materials; damaged
> sheetrock due to water intrusion; damaged exterior sheathing due to water
> intrusion; major framing defects, sagging roof decking, and more.

(Ex. D3 at 2; *cf.* Ex. E at 2, ¶6 for nearly identical allegations in separate *HOA* lawsuit)

4.27    When Parkway was sued in the underlying lawsuits, it initially tendered its defense to EMC, which began providing a defense to Parkway.  (Ex. A, ¶6).

4.28    In addition to providing a defense to Parkway, by September 29, 2011 letter to the agent shown in a certificate of insurance evidencing UFP's insurance coverage, EMC also tendered Parkway's defense in the underlying lawsuits to Discover.  (Ex. A, ¶7; Ex. F1 at UFP0183 (certificate of insurance); Ex. G, ¶4; Ex.H (tender letter)).

4.29    Discover never responded to the tender of Parkway's defense in the underlying lawsuits before this suit was filed on May 29, 2012, and has yet to assume Parkway's defense. (Ex. A at ¶8; Ex. G at ¶4).

4.30    Both Discover policies include an endorsement entitled "Other Insurance" that in its first paragraph in general makes Discover's coverage excess to most other available coverage, but in its third paragraph, in the context of additional insureds like Parkway which bargained with Discover's named insured for primary coverage, explicitly agrees Discover's coverage is primary:

> 3.   Notwithstanding the provisions of paragraph 1., the insurance afforded by this
>      policy is primary insurance with respect to those insureds to whom you are
>      obligated by contract to provide primary insurance.

(Ex. I at 86; Ex. J at 76).

4.31    EMC's own policy issued to Parkway specifies that EMC's coverage for it is "excess over … [a]ny other insurance available to [it] covering liability for damages" arising out of operations "for which [it] has been added as an additional insured by attachment of an

endorsement."  (Ex. B at 34, ¶4.b.(2)).

4.32    EMC's policy also provides that when its coverage is excess, EMC has no duty to defend Parkway against any suit that another insurer has a duty to defend, but that if that other insurer does not defend, EMC would do so but be entitled to Parkway's rights against the non-defending insurer.  *Id.*

**V.**

**ARGUMENTS & AUTHORITIES**

**A.    Parkway Builders, LLC is the Parkway Builders entity insured by Discover.**

As shown, Discover's policies include as additional insureds organizations, like Parkway, for liability caused by named insured UFP's acts, omissions or work, "where required by written contract" between UFP and the additional insured.  (Ex. I at 61, 65; Ex. J at 50, 55).  And as also shown, the Parkway-UFP contract required UFP to have Parkway additionally insured under UFP's commercial general liability policy.  (Ex. F1 at UFP0173, ¶8(B) and at UFP0182, ¶6).

The Parkway-UFP contract was dated July 1, 2008, and referred to the Parkway entity in three different ways:  (1) "Parkway Builders, LP", (2) at the signature line – "Parkway Builders, LP, a limited liability company", and (3) just "Parkway Builders".  The party to the contract, and thus the intended additional insured, could not have been "Parkway Builders, LP", since previously on March 3, 2008, the entity with that name changed its name to "Parkway Builders I, LP".  (Ex. L2).  On that same March 3, 2008, "Parkway Builders, LLC" was formed.  (Ex. L3).  By adding the identifying statement "limited liability company" at the signature line for Parkway (Ex. F1 at UFP0176), the 7/1/2008 contract clumsily but unmistakably pointed to "Parkway Builders, LLC" as the entity contracting with UFP and

intended to be additionally insured by Discover.

But if per chance the Parkway-UFP contract in isolation *might* leave a potential fact issue as to the precise legal name of Discover's additional insured, the pleadings in the underlying lawsuits *conclusively* resolve that issue.   *I.e.*, Discover's named insured sued Parkway Builders, LLC, claiming Parkway Builders, LLC was the entity that breached its contract to pay for its products and services.  (Ex. D1).  Further, the homeowners' association and the Ingrams have sued Parkway Builders, LLC, and not Parkway Builders I, LP or any other "Parkway Builders" entity.  (Ex. D2-D3; Ex. E).  The Court should not even consider any extrinsic evidence allegedly contrary to the pleaded facts that Parkway Builders LLC contracted with UFP and built the amenity center and Ingram townhome.  *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) ("In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition"); *cf. Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22 (Tex. 1965) (refusing to consider extrinsic evidence that the named insured was in fact not the agent of Newport, when the underlying pleading alleged that agency with the result that Newport then qualified as an insured under the policy).

**B.**     **Discover has a duty to defend Parkway in the underlying lawsuits.**

The rules in Texas regarding whether an insurer has a duty to defend are decidedly slanted in favor of such a duty:

> [I]n considering [the plaintiff's] allegations a liberal interpretation of their meaning should be indulged.  It is stated …
>
> > 'Where the complaint does not state facts sufficient to clearly bring the case within or without coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether … the allegations of a complaint

… state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend …, such doubt will be resolved in insured's favor.'

*Heyden Newport Chem. Corp.*, 387 S.W.2d at 26; *accord Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008) (similarly noting a court should "resolve all doubts … in favor of the duty" and "construe the pleadings liberally", and observing "If a complaint potentially includes a covered claim, the insurer must defend the entire suit").

> **1.    Deferring for the moment analysis of the "Self-Funded Retention" endorsement, Discover has a duty to defend Parkway because the underlying pleadings allege damages caused by UFP's acts, omissions and work.**

Recall that Discover's policies obligate it to provide a defense to suits against an insured asserting liability for damages because of "bodily injury" (which is defined in the policies to include mental anguish) or "property damage" (which is defined in the policies to include "physical injury to … or … loss of use of tangible property"), when the injury or damage occurs during the policy period and is caused by an "occurrence" or accident.  (Ex. I at 34, 47-48, 68; Ex. J at 22, 35-36, 58).  And for Parkway to be an additional insured under Discover's policies, the injuries or damages would further need to be alleged to have at least "in part" be caused by the acts, omissions or work of named insured UFP, or others working on UFP's behalf.  (Ex. I at 61, 65; Ex. J at 50, 55).

The pleadings plainly allege "property damage", with at least some of the "physical injury to tangible property" allegedly due in part to UFP's work for purposes of Discover's additional insured endorsements:

- The Ingrams alleged "UFP participated in the design and/or construction" of their townhome, and "furnished the majority of the labor and/or materials that have been found to be defective".  (Ex. D2 at 9).  The Ingrams go on to allege,

*inter alia*:

- o "UFP negligently undertook to engage in activities reserved for structural engineers, and in so doing, should have recognized that it was necessary for the protection of the INGRAMS to ensure the building was structurally sound, given their actions involving the design of structural members and loading" (Ex. D2 at 30); and
- o "[D]ue to UFP's failure to construct and/or install the framing system, roof trusses and/or floor trusses in accordance with the plans/specifications and/or pertinent industry standard, the INGRAMS suffered the property damage caused by leaks and water intrusion …" *Id.*

• The homeowners' association alleged "numerous construction defects" including "major framing defects, sagging roof decking, and more". (Ex. D3 at 2, *cf.* Ex. E at 2, ¶6).

As for the requirement of an "occurrence" or accident, Texas law firmly holds "that allegations of unintended construction defects may constitute an 'accident' or 'occurrence'" under a general liability policy. *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1, 4 (2007); *accord Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.*, 248 S.W.3d 171, 172 (Tex. 2008) (per curiam). Therefore, the allegations also sufficiently allege the requisite "accident" or "occurrence".

Since UFP's own pleading against Parkway establishes it performed its work during the July 2008 to October 2008 time period (Ex. D1 at 4, ¶26), obviously some of the alleged "physical injury to tangible property" allegedly potentially occurred during Discover's first 06/01/2008-06/01/2009 policy period. Further, liberally construing the pleadings, at least some of the alleged damages – such as, for example, the alleged "water intrusion" and "sagging roof decking" – potentially may have occurred during Discover's second 06/01/2009-06/01/2010 policy period.

Switching gears to look for accidentally caused "bodily injury" occurring during a policy period, recall that the Ingrams alleged mental anguish. (Ex. D2 at 39). Discover's policies explicitly define "bodily injury" to include such alleged mental anguish. (Ex. I at 68; Ex. J at 58). The Ingrams did not allege when they purchased their home, so liberally construed, their pleading potentially alleges mental anguish during both Discover policy periods. And as already shown, allegations of defective construction can qualify as an "accident" or "occurrence" under Texas law, and that would be true to any mental anguish allegedly suffered as a consequence of the defective construction. *See generally Lamar Homes*, 242 S.W.3d at 8 ("An accident is generally understood to be a fortuitous, unexpected, and unintended event.")

In short, setting aside for the moment the potential impact of the SFR endorsement, the Ingrams' and the HOA's pleadings unquestionably allege liability potentially covered by Discover's policies, triggering its duty to defend Parkway.

**2. Discover's "Self-Funded Retention" endorsements do not apply to additional insureds, and are instead unenforceable against Parkway.**

Discover's policies clearly show it knew how – when desired – to modify or restrict coverage for its additional insureds. The policies contain multiple additional insured provisions, at least one of which under some circumstances modifies the limits of insurance provided by the policies for the additional insureds. And the endorsements at issue here clearly limit the coverage afforded the additional insured to circumstances where named insured UFP's acts, omissions or work at least in part caused the injury or damage for which the additional insured is allegedly liable. But no similarly clear statement of application to additional insureds can be found in the policies' self-funded retention ("SFR") endorsements;

indeed, those endorsements are antithetical to the coverage afforded additional insureds.

For example, the SFR endorsements purport to reduce the policy limits in an amount equal to the retention, *i.e.*, effectively to zero:  limits of $2 million per occurrence under the declarations minus limits of $2 million per "incident" (defined to mean the same as an "occurrence" when applied to "bodily injury" and "property damage" liability) equals remaining limits of $0.  (Ex. I at 50; Ex. J at 39).  To apply the SFR endorsements to additional insureds renders any coverage afforded them (as explicitly required by UFP's contract with Parkway) completely illusory and meaningless.  One of the additional insured endorsements provides the coverage afforded the additional insured is no more than the greater of the policy's limits or the amount required by the contract between the named insured and additional insured.  (Ex. I at 29; Ex. J at 56).  But if the SFR endorsements apply to additional insureds, then the additional insured for all practical purposes will never have any insurance because the self-insured retention equals the policy limits, thereby rendering the limits-reducing additional insured endorsement and the UFP contract requiring it completely meaningless.  *See Gilbert Texas Const., L.P. v. Underwriters at Lloyd's*, 327 S.W.3d 118, 126 (Tex. 2010) ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless").

As another example, the SFR endorsements recognize Discover's defense obligations, but then purports to "delegate the responsibility to … defend … 'suits' to you" – meaning to the named insured.  (Ex. I at 51, ¶D.1; Ex. J at 40, ¶D.1).  In other words, if the SFR endorsement applies to additional insureds, then Parkway's defense is delegated under the policy to UFP.  That would be an absurd result.  Since an additional insured's status as such basically requires the named insured to be at least partially at fault, if an additional insured's

defense is delegated to the at-fault named insured it will almost always create an irreconcilable conflict of interests.  *See also Shell Chem. LP v. Discover Property & Casualty Ins. Co.*, 2010 WL 1338068, *5 (S.D. Tex. Mar. 29, 2010) (rejecting application of Discover's SFR endorsement to an additional insured because "the duty to defend is non-delegable") (citing *Minnesota Life Ins. Co. v. Vasquez*, 133 S.W.3d 320, 330 (Tex. App. – Corpus Christi 2004, rev'd on other grounds)).  Of course, a straightforward recognition of the silence of the SFR endorsements as to their application to additional insureds as meaning the endorsements in fact do not apply to additional insureds avoids all those absurdities and gives meaning to all of the policies' provisions.

Finally, paragraph F of Discover's SFR endorsements provide "The insured will pay 100% of any 'claim expenses'", which is in turn defined to mean "Attorney fees and all other litigation expenses".  (Ex. I at 52; Ex. J at 41).  An additional insured is in most instances a form of "third-party beneficiary" under an insurance contract.  *See Merced County Mut. Fire Ins. Co. v. State*, 284 Cal. Rptr. 680, 686 (Cal. App. 1991) ("an additional insured added by endorsement is a third-party beneficiary of the insurance contract"); s*ee also Walker v. State Farm Lloyds*, No. 3:03-CV-1514-R, 2004 WL 1462200 (N.D. Tex., June 28, 2004) ("To successfully advance a third-party beneficiary claim, Walker could have had the insured procure an endorsement adding his name to the Policy as an additional insured").  If Discover's SFR endorsement applies to additional insureds, however, it would turn the relationship on its head and seemingly make the additional insured a third-party obligor.  That problem disappears, however, if the paragraph F obligation to "pay 100% of 'claim expenses'" is tied back to an earlier paragraph D condition in the SFR endorsement that "You [*i.e.*, Discover's named insured, UFP] will pay your share of 'claim expenses' in accordance

with paragraph F."

In sum, Discover's SFR endorsements never explicitly state they apply to additional insureds, and indeed do not make sense if applied to additional insureds like Parkway. Otherwise, the endorsements would render other portions of the policies meaningless, needlessly create irreconcilable conflicts of interest, and turn the insurer-additional insured relationship on its head by transforming the additional insured from a third-party beneficiary to a third-party obligor. Discover's SFR endorsements do not need to be construed to apply to additional insureds; instead they readily can be construed to only apply to claims against Discover's named insureds. And if the SFR endorsements do not apply to additional insureds like Parkway, they then have no effect on Discover's duty to defend, and as shown above, Discover has a duty to defend Parkway for the claims pleaded against it by the Ingrams and homeowners' association.

**C.     Discover's coverage for Parkway is "primary", and EMC's is "excess", with the result that only Discover has a duty to defend Parkway in the underlying lawsuits.**

Discover's policies unequivocally state they are "primary" under the circumstances presented:

- Discover's "Other Insurance" endorsement provide that "the insurance afforded by this policy is primary insurance with respect to those insureds to whom you [*i.e.*, named insured UFP] are obligated by contract to provide primary insurance" (Ex. I at 86; Ex. J at 76); and

- The main body of UFP's contract with Parkway requires that the coverage provided by UFP's general liability insurer is to be "primary and any insurance provided by [Parkway] is excess and non contributory" (Ex. F1 at UFP0173,

¶8(B)), and the "Agreement Addendum" UFP added confirms that its general liability coverage would contain "primary wording". (Ex. F1 at UFP0182, ¶6).

Accordingly, the priorities-of-coverage issue between the two insurers really turns on whether EMC's coverage for Parkway is also primary, or is instead excess. If EMC's coverage is also primary, then the costs of Parkway's defense should be split 50-50 between the two carriers. But if EMC's coverage for Parkway is excess, then it will have no duty to defend so long as Discover has a duty to defend Parkway.

In that regard, both Discover and EMC in their policies use a basic Insurance Services Office or "ISO" coverage form no. CG 00 01; Discover's policies use a later 12/07 version of the form (Ex. I at 34-49; Ex. J at 22-37), while EMC's policy uses the 12/04 version (Ex. B at 24-38), but the operative language in all three policies is identical:[6]/

> This insurance is excess over:
>
> ...
>
> (b) Any other primary insurance available to you [*i.e.*, in EMC's policy, named insured Parkway] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(Ex. B at 34, ¶4.b.(2); Ex. I at 44, ¶4.b.(2); Ex. J at 32, ¶4.b.2).

As already discussed, Parkway is an additional insured of Discover under a pair of additional insured endorsements in both Discover policies – one applicable for damages occurring while UFP's operations are ongoing, and one applicable after UFP's operations are completed. (Ex. I at 61, 65; Ex. J at 50, 55). Those circumstances squarely trigger the quoted "excess" clause in EMC's policy. Courts have applied the EMC excess "other insurance"

---

[6]  Hence, it would be nonsensical to contend the provisions "conflict" for purposes of the Texas rule of ignoring conflicting "other insurance" provision. *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 589 (Tex. 1969).

clause according to its plain terms, and held that the insurance thus provided is excess to primary insurance provided to the named insured as another insurer's additional insured via endorsement. *E.g., Tishman Constr. Corp. v. American Mfrs. Mut. Ins. Co.*, 757 N.Y.S.2d 535, 537 (N.Y. App. Div. 2003) (affirming lower court's holding that contractor's own insurer was excess to coverage provided contractor as additional insured under subcontractor's policy, and observing that "[t]here is nothing ambiguous about this provision").

Recognizing EMC's coverage for Parkway as "excess" is also consistent with UFP's agreement with Parkway that "any insurance provided by [Parkway] is excess and non-contributory." (Ex. F1 at UFP0173, ¶8(B)).  In construing "other insurance" clauses, giving "dominant consideration to the rights of the insured" is the fundamental rule to be observed, *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 589 (Tex. 1969), and that should include honoring Parkway's bargained-for primary protection under UFP's policies.  Vis-à-vis Parkway, Discover's policies are primary with a duty to defend.  In regards to the EMC policy, in contrast, EMC's excess clause is triggered because Parkway has been added as an additional insured to Discover's policies via a pair of endorsements. EMC's limits do not go away – they just set atop Discover's underlying primary policies.  By enforcing the Discover and EMC "other insurance" provisions pursuant to their terms, Parkway is fully defended, has the benefit of primary insurance from Discover, and then also has the benefit of an excess layer of coverage above that from EMC.

When EMC's coverage is excess, it has no duty to defend "if any other insurer has a duty to defend …":

When this insurance is excess, we will have no duty … to defend the insured against any

"suit" if any other insurer has a duty to defend the insured against that "suit".

(Ex B at 34, ¶4.b.(2)).   As already shown above, Discover should have a duty to defend Parkway against the claims asserted by the Ingrams and the homeowners' association, with the result that only Discover, and not EMC, should have a duty to defend in regards to those claims.  S*ee also Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 700-01 (Tex. 2000) (an umbrella insurer generally does not have a duty to defend until the underlying primary exhausts its limits, thereby extinguishing the primary's duty to defend).

## VI.
### CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, EMC requests partial summary judgment declaring that Discover has a duty to defend Parkway Builders, LLC in the underlying lawsuits, which duty Discover has breached.   Additionally, EMC requests the Court declare EMC's coverage for Parkway is excess to that provided by Discover, with the quantum of Discover's obligation to reimburse EMC for Parkway's past defense costs, and penalty interest thereon, to be subsequently determined by stipulation or trial, if necessary. Finally, Plaintiff EMC prays for such other and further relief to it may be justly entitled.

Respectfully submitted,

By: /s/ *Thomas D. Caudle*

     Thomas D. Caudle
     Texas State Bar No. 04017500

SCHUBERT & EVANS, P.C.
900 Jackson Street, Suite 630
Dallas, TX  75202
PH:  (214) 217-3678
FX:  (214) 744-4403
Email: tcaudle@schubertevans.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

     I certify that on the 4th day of February, 2013, a true and correct copy of the foregoing was served on the following counsel in the manner listed:

Tory F. Taylor
LITCHFIELD CAVO L.L.P.
3040 Post Oak Boulevard, Suite 1750
Houston, TX  77056
    *Attorney for Discover*

Via ECF Notice of Electronic Filing
    and via regular mail

    /s/ *Thomas D. Caudle*

    Thomas D. Caudle